**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DENISE PROCTOR and TYREA ALEXANDER, | |
| Plaintiffs, | Civil Action No. 04-cv-899 (PGS) |
| v. | |
| ARMDS, INC. | **OPINION** |
| Defendant. | |

**SHERIDAN, U.S.D.J.**

This matter comes before this Court on a motion for summary judgment on all counts of the Complaint, claiming that plaintiffs cannot establish, as a matter of law, prima facie cases of racial discrimination and retaliatory conduct under Title VII and the NJLAD.

I.

This awkward pleading contains two sets of facts relating to two separate plaintiffs, Plaintiff Denise Proctor ("Proctor") and Plaintiff Tyrea Alexander ("Alexander"). The only fact in common is that both plaintiffs allege discrimination against the same employer. The motion for summary judgment is essentially two separate motions.

*Facts Relating to Proctor*

Prior to March 2003, Plaintiff Denise Proctor, an African American, applied for an Assistant Medicaid Manager position with Defendant Accounts Receivable Management Data Services, Inc. ("ARMDS" or "defendant"), a consultation firm serving hospitals and nursing homes throughout the

State of New Jersey. In Proctor's resume, submitted in support of her application, Proctor stated that she was "knowledgeable of Medicaid, Medicare, Social Security and Charity Care programs." Similarly, at her interview, Proctor reiterated that she was knowledgeable of Medicaid. Contrary to these assertions, during the course of Proctor's deposition, Proctor explained what she meant at the time was that she "knew of" or was aware of the existence of these programs. Proctor was hired as an Assistant Medicaid Manager in March 2003.

The amount and adequacy of the training provided to Proctor is in dispute. In defendant's Rule 56.1 Statement, defendant creates a timeline, listing dates and the substance of the training provided. For the most part, Proctor maintains that she "lacks sufficient memory to admit or deny the occurrence of these training sessions." However, while Proctor cannot recall whether certain training sessions took place, she specifically recalls that she "did not receive the classroom training related to Medicaid screening and Charity Care that all other similarly situated ARMDS employees received."

Proctor commenced her employment with ARDMS on March 19, 2003; but did not report to Cooper Hospital until March 31, 2003. In the interim, Proctor was provided about 7 or 8 days of orientation. During that time, she reviewed and studied the Social Security and Medicaid manuals, attended a training session and training meeting on screening patients for Medicaid eligibility, and completion of Self Pay Assessment forms, observed Mike Lopez, Assistant Manager of Entitlements, interviewing patients, completing forms, and lastly, attended a court hearing on a social security case. Upon her arrival at Cooper Hospital, according to defendant, plaintiff received additional, on-the-job Medicaid and Social Security training.

On May 30, 2003, Proctor began performing bedside screenings. At that time, Proctor alleges that she was told she would be at bedsides permanently. Despite retaining the salary and title

of an Assistant Medicaid Manager, Proctor claims that she was discriminated against by being demoted first to a Charity Care position and then to a Bedside Coordinator position. Defendant maintains that these assignments were not demotions, but necessary tasks for Proctor to learn in order to properly supervise staff that would perform such functions.

According to defendant, Proctor was unable to (a) screen patients properly, (b) grasp basic concepts, (c) fully complete forms, (d) follow the questionnaire protocol, or (e) perform interviews. On June 20, 2003, Proctor was terminated. Defendant maintains that the termination was the result of poor performance.

*Facts Relating to Alexander*[1]

Plaintiff Tyrea Alexander, an African American, was hired as an Assistant Manager for ARMDS in June 2001 and promoted to Manager of the Rancocas Business Office in Riverside, New Jersey in 2002. In September of 2002, Alexander reported an alleged racial comment made by Cindy Cole[2] about one of Alexander's African American subordinates. While Cole maintains that her comment was not intended to be discriminatory, the matter was investigated by the company, Cole was reprimanded, and a formal apology was offered for the comment.

Because Alexander reported the incident, she alleges that she was retaliated against by Cole and others. Specifically, Alexander points to a luncheon, eight months later, she set up for her subordinates. Alexander claims the luncheon was "sabotaged" by Cole and Frank Troncosco

---

[1] Of the 191 paragraphs contained in defendant's Rule 56.1 Statement, paragraphs 117-191 appear under the heading "As To Plaintiff Alexander." However, paragraphs 136-140, 154-157, 159, and 161 appear to inadvertently refer to Proctor. Plaintiffs categorically deny these statements. The Court is unable to make the determination that these statements were intended to refer to Alexander and even if the Court were to make such a determination, plaintiffs would not have the opportunity to properly respond. Thus, these statements are not considered.

[2] Cole was Proctor's supervisor. Defendant maintains that Cole was not part of the decision to terminate Proctor.

because neither Cole nor Troncosco would cover for Alexander at the facility to which she was assigned. As a result, the luncheon was canceled. Troncosco appears to have been Alexander's supervisor. Following this alleged incident, Alexander requested a transfer from the supervision of Troncosco. The request was granted and Alexander was transferred to Cooper Hospital in June 2003.[3] After about one week at Cooper Hospital, Alexander took a stress related leave on "her doctor's advice that she needed a break from her job for the sake of her mental health."

Upon her return to work, Alexander was placed at Atlantic City Medical Center, a transfer that Alexander alleges was in retaliation for her complaint about Cole's allegedly discriminatory remark. Alexander complained that the travel to Atlantic City Medical Center was "harmful to [her] health and very painful for her." Alexander claims that ARMDS ignored her request for a transfer from Atlantic City Medical Center until she presented a note from her physician restricting Alexander from traveling long distances.[4] Alexander was thereafter reassigned to the Burlington Office in Mount Holly, New Jersey, which is approximately nine (9) miles from Alexander's home. According to defendant, this position was the only managerial position open at the time to which Alexander could be transferred. However, while considered a managerial position, the position did not involve supervising a staff.

The facts suggest that the new position removed Alexander from the "operations department."[5] Alexander alleges that this was part of the retaliation. The fact that she was no longer

---

[3] Defendant also alleges that the transfer was a result of several complaints from Alexander's subordinates, which Alexander denies.

[4] Defendant argues that after receiving Alexander's initial complaint, the company instructed Alexander to submit a doctor's note. Alexander asserts that ARMDS never instructed her to submit a doctor's note.

[5] Defendant states that Operations and Staff are two distinct classifications of employees within ARMDS.

part of the operations department had no effect on Alexander's salary. As proof of a de facto demotion, Alexander points to a January 30, 2004 memorandum from Michael Conco, Director of ARMDS, which advised that Alexander was no longer part of operations. In addition, Alexander was directed to ascertain answers about certain accounts from subordinates of hers because she was no longer given access to such information. At no time, however, was Alexander ever directed to report to these subordinates. Alexander alleges that following the issuance of this memorandum, her employees' attitude toward her changed, because they no longer viewed her as a supervisor.

Thereafter, on February 24, 2004, Alexander submitted a letter of resignation, specifically citing the January 30, 2004 memorandum and regarding it as part of "continued ill-treatment" of Alexander which she found "insulting and humiliating." Allegedly unable to "endure the alienation and the differential treatment," Alexander resigned effective March 6, 2004.

II.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively

the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

III.

Plaintiffs initially challenge the exhibits and affidavits submitted in support of the motion for summary judgment. According to plaintiffs, several exhibits, namely the internal memorandums, constitute inadmissible hearsay. It is further maintained that the affidavits are defective in that they are made on information beyond the affiants' personal knowledge.

The general rule is that on a motion for summary judgment, a court may not consider a hearsay statement that would be inadmissible at trial. *Blackburn v. United Parcel Serv.*, 179 F.3d 81, 95 (3d Cir.1999) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n. 1 (3d Cir.1996)). Accordingly, "hearsay evidence produced in sworn testimony may be considered if the out-of-court declarant could later present that evidence through direct testimony, i.e. 'in a form that would be admissible at trial.'" *Williams v. West Chester*, 891 F.2d 458, 466 n. 12 (3d Cir.1989).

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence" and must "show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). See also, *Petruzzi's IGA Supermarkets, Inc., v. Darling-Delaware Co.*, 998 F.2d 1224, 1234 n. 9 (3d Cir.1993) (observing that evidence introduced at summary judgment stage must be "capable of being admissible at trial"). Hearsay declarations in affidavits may be considered in summary judgment if the declarant would be available for trial and the declaration as set forth in the affidavit would be admissible if it were made by the declarant in court. *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir.1990).

A party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to the hearsay rule, or that the material is not hearsay. *Bouriez v. Carnegie Mellon University*, 2005 WL 2106582 (W.D.Pa. 2005)(citing *Burgess v. Allstate Ins.*

*Co.*, 334 F.Supp.2d 1351 (N.D.Ga.2003)). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. *Id.* (citing *Henry v. Colonial Baking Co. of Dothan*, 952 F.Supp. 744 (M.D.Ala.1996)).

Here, defendant has not responded to plaintiffs' hearsay objections by way of a reply brief or otherwise. While the affidavits submitted in support of the motion are, to a certain extent, beyond the personal knowledge of the affiant, the Court must disregard those statements. The inclusion of statements outside of the affiant's personal knowledge, however, does not render the entire affidavit defective. Thus, the Court does not consider any statement within the affidavits that could possibly be beyond the personal knowledge of the affiant. With regard to the challenged exhibits, e-mail correspondence and letters, such documents have been deemed inadmissible hearsay on a motion for summary judgment when offered as proof of the matter it asserted or when not supported by an affidavit. *Bouriez*, 952 F.Supp. 744 (W.D.Pa. 2005)(citing *Nokes v. U.S. Coast Guard*, 282 F.Supp.2d 1085 (D.Minn.2003)). Without any reasoning to suggest their clear admissibility at the time of trial, these documents cannot be considered for purposes of this motion. This rule of law will be discussed further in the following sections.

IV.

Title VII prohibits employment discrimination because of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Asserting a claim of disparate treatment under Title VII, plaintiffs must first prove a prima facie case of discrimination by a preponderance of the evidence. See *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)(quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).[6] To make a prima facie case of employment

---

[6] "Analysis of a claim made pursuant to the NJLAD generally follows analysis of a Title VII claim." *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir.1999). Therefore, the analysis of plaintiffs' Title VII claim of discrimination on the basis of race applies to plaintiffs'

discrimination here, plaintiffs must prove 1) that they belong to a protected class; 2) that they were qualified for the positions; 3) that they were subject to an adverse employment action despite being qualified; and 4) other similarly situated individuals not in the protected group received better treatment. See *id.* at 254 n. 6; *Abramson v. William Patterson College of New Jersey*, 260 F.3d 265, 281-82 (3d Cir.2001). See also *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352-56 (3d Cir.1999); *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797-98 (3d Cir.2003), *cert. denied sub nom. Sarullo v. Potter*, 541 U.S. 1064 (2004); *Burdine*, 450 U.S. at 254.

Once established, plaintiffs' prima facie case creates a rebuttable presumption of discriminatory intent. See *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Burdine*, 450 U.S. at 254. While the ultimate burden of proof always remains with plaintiffs, the burden of production now shifts to defendant, who must articulate a legitimate, nondiscriminatory reason for its actions. See *Hicks*, 509 U.S. at 507; *Burdine*, 450 U.S. at 253. To satisfy its burden, defendant must come forward with admissible evidence supporting the nondiscriminatory reason or reasons for its actions. See *Burdine*, 450 U.S. at 255. "The *McDonnell Douglas* formula is grounded in the presumption that if a rational reason for disparate treatment is not forthcoming, it is more likely than not that illegal discrimination played a role in the [adverse] decision." *Chauhan v. M. Alfieri Co.*, 897 F.2d 123, 127 (3d Cir.1990) (citations omitted). Once defendant satisfies its burden, the presumption of discriminatory intent is rebutted and drops from the case. See *id.*

The burden of production then shifts back to plaintiffs, who must come forward with admissible evidence showing that the articulated, nondiscriminatory reasons were not the true reasons for the adverse action, but merely a "pretext for discrimination." *McDonnell Douglas*, 411 U.S. at 804; *Hicks*, 509 U.S. at 507-08; *Burdine*, 450 U.S. at 253. "[A] plaintiff does not need direct

---

identical claims under the NJLAD.

evidence of pretext in order to survive summary judgment." *Chauhan*, 897 F.2d at 127 (citing *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.), *cert. dismissed*, 483 U.S. 1052 (1987)). "Instead, a plaintiff needs to be able to 'point to evidence which calls into question the defendant's intent.'" *Id.* (quoting *Chipollini*, 814 F.2d at 899). "In sum, the plaintiff cannot rely solely on a potential finding that the defendant's explanation is implausible. The fact that a judge or a jury might disbelieve the defendant's asserted nondiscriminatory reason is not enough, by itself, to preclude summary judgment. Rather, the plaintiffs must be able to adduce evidence, whether direct or circumstantial, from which a reasonable jury could conclude that the defendant's explanation is incredible." *Id.* at 128 (citation omitted).

V.

Defendant maintains that Proctor was never qualified for the position for which she was hired, and that Proctor was given the job of Assistant Medicaid Manager based on representations in her resume and those made during the interview process. That is, Proctor represented she was knowledgeable of Medicaid, Medicare, Social Security and Charity Care programs. Proctor would later admit that her representations merely meant that she knew of the existence of these programs. According to case law, if Proctor was not qualified for the position, a prima facie case cannot be established and the inquiry ends.

The Third Circuit has noted that if a plaintiff is not qualified for the job he or she seeks, the Court can reject a discrimination claim without the heavy lifting that is required if a prima facie case is made out. *Dorsey v. Pittsburgh Associates*, 90 Fed.Appx. 636, 639 (3d Cir. 2004)(citing *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 n. 4 (3d Cir.1999). However, "[w]hile objective job qualifications should be considered in evaluating the plaintiff's prima facie case, the question of whether an employee possesses a subjective quality...is better left to consideration of whether the

employer's nondiscriminatory reason...is pretext." *Id.* (quoting *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir.1995) (internal citations omitted). "[T]o deny the plaintiff an opportunity to move beyond the initial stage of establishing a prima facie case because he [or she] has failed to introduce evidence showing he [or she] possesses certain subjective qualities would improperly prevent the court from examining the criteria to determine whether their use was mere pretext." *Id.* (quoting *Sempier*, 45 F.3d at 729) (internal citations omitted).

Defendant submits the affidavit of Marta Adubato, who claims to be "involved in hiring employees at ARMDS." In her affidavit, Adubato states that "[i]n order to be hired for a managerial position at ARMDS, an employee needs experience with federal programs, such as Medicaid." Adubato goes on to state that she "never would have hired [Proctor], had [Adubato] known that [Proctor] misrepresented herself and did not have the type of experience with federal programs, in particular Medicaid..."

Proctor maintains that she made no misrepresentations to the ARMDS personnel and that she was, in fact, qualified for the position. To support this position, Proctor points to the fact that she passed the Charity Care test given to her with a score of 86%. However, Proctor does not deny or challenge the requirements for a managerial position at ARMDS. The job for which Proctor applied required experience with federal programs. Experience, as opposed to leadership or managerial skills, is an objective qualification which this Court can consider in determining whether the plaintiff has established a prima facie case. Proctor admits that she submitted a resume which states, under the section entitled "Employment History" and within the subparagraph concerning her prior employment with Programs for Parents, Inc., that she was "Knowledgeable of Medicaid, Medicare, Social Security and Charity Care programs." A similar statement is repeated under the section entitled "Skills." Proctor further admitted in response to defendant's Rule 56.1 Statement and at her

deposition that her statement of "knowledge of" the programs merely meant that she "knew of" the programs or was aware of the existence of the programs.

Miriam-Webster explains that "knowledge" is "the fact or condition of knowing something with familiarity gained through experience or association." *Miriam-Webster Dictionary Online*, http://m-w.com/dictionary/knowledge. In this case, Proctor was not familiar with the federal programs, but was only aware of their existence. Furthermore, awareness of the existence of the programs does not correspond to experience with such programs.

In short, Proctor was not qualified for the job for which she was hired and, therefore, cannot establish a prima facie case for discrimination under Title VII or the NJLAD.

VI.

Similar to Proctor, defendant argues that Alexander cannot establish a prima facie case of race discrimination. However, unlike its previous arguments, defendant does not challenge the qualifications of Alexander. Rather, defendant asserts that Alexander has failed to satisfy the fourth prong of a prima facie case. Alexander must show that similarly situated white employees "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." *Bullock v. Children's Hosp. of Philadelphia*, 45 F.3d 724, 489 (E.D.Pa.1999) (citation and internal quotations omitted).

Apart from the bald allegation by Alexander that "[n]either Cindy Cole nor any of the other white managerial employees of ARMDS . . . received adverse treatment that was anything like the severe adverse treatment" to which Alexander was subjected, Alexander offers little evidence of disparate treatment. The Court is also mindful of the heavy burden placed on a plaintiff to show the alleged retaliatory actions were "materially adverse" in that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore v. City of*

*Philadelphia*, 2006 WL 2492256 (3d Cir. 2006)(quoting *Burlington N. & Santa Fe Ry. Co. v. White*, ---U.S. ----, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006)). Despite the seeming lack of evidence, the Court is troubled, not only by the defective Rule 56.1 Statement, as noted in footnote 1, which effectively limits the facts with regard to Alexander, but also the Certification of Michael Conca, which suffers from the same faults. It appears that in several paragraphs of his certification, Conca mistakenly refers to Proctor rather than Alexander. In short, this mistake, although inadvertent, is an issue because it undermines the trustworthiness of the affidavit. These deficiencies lead this Court to doubt the reliability of the Certification. In light of these shortcomings, the Court must deny summary judgment as against Plaintiff Alexander.

### VII.

In summary, defendant's motion for summary judgment is granted as to Plaintiff Denise Proctor and denied as to Plaintiff Tyrea Alexander.

November 20, 2006

PETER G. SHERIDAN, U.S.D.J.